# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

GARRY FARRELL,

       **Plaintiff,**

v.                                          **Civil Action 2:19-cv-2127**
                                                **Judge James L. Graham**
                                                **Magistrate Judge Kimberly A. Jolson**

COMMISSIONER OF
SOCIAL SECURITY,

       **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Garry Farrell, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and Administrative Law Judge under Sentence Four of § 405(g).

## I.    BACKGROUND

Plaintiff filed his applications for DIB and SSI on June 4, 2015, alleging that he was disabled beginning April 14, 2014. (Doc. 9, Tr. 228–38). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on March 22, 2018. (Tr. 31–61). On July 13, 2018, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 9–30). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Appeals Council's decision on May 22, 2019 (Doc. 1), and the Commissioner filed the administrative record on August 19, 2019, (Doc. 9). This matter is now ripe for review. (*See* Docs. 10, 11, 12).

In his decision, the ALJ found that Plaintiff met the insured status requirements of the Social Security act through September 30, 2017, (Tr. 14), and had not engaged in substantial gainful activity since April 14, 2014, the alleged onset date, (Tr. 15). He found that Plaintiff suffers from the following severe impairments: degenerative joint disease of the right ankle, status post-surgical repair of torn ligaments; obesity; anxiety disorder with panic attacks and agoraphobia; obsessive compulsive disorder ("OCD"); post-traumatic stress disorder ("PTSD"). (*Id*.). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 18).

As for Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

[T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: frequently climb ramps/stairs, balance, and stoop; occasionally climb ladders/ropes/scaffolds, crouch, crawl, and work around hazards such as dangerous machinery and unprotected heights. Additionally, the claimant is limited to simple, routine tasks with no fast production pace. He can occasionally interact with others but not perform tandem tasks or be involved in teamwork positions, in conflict resolution, in persuading others, or in customer service positions. And there can be only occasional changes in the work setting.

(Tr. 19–20).

**A. Relevant Hearing Testimony**

At the hearing, Plaintiff testified that he generally does not leave the house. (*See, e.g.*, Tr. 43). He stated that his previous job ended because he was missing days and leaving work early with panic attacks. (Tr. 35). He also testified that he has not looked for work since moving to Ohio because of his anxiety. (*Id*.). Plaintiff testified that, on good days, his anxiety is a four or

five; on most days, however, his anxiety is an eight or nine. (Tr. 40). He also testified that he has difficulty being in public places with noise and commotion and that he suffers from short attention. (Tr. 43).

Also, at the hearing, Michael Lace, Psy.D., a medical expert, testified that Plaintiff suffers from panic disorder, agoraphobia, generalized anxiety disorder, and obsessive-compulsive disorder. (Tr. 49). He testified that the mental status exams in the record "suggest a fairly high level of anxiety, constrictive affect, somewhat compromised at times." (Tr. 50). He further stated that it is "difficult[] to lend a lot of credibility" to the reports of Plaintiff's therapists because they were not provided by an acceptable medical source. (*Id.*). He also testified that there "appear[s] to be some ongoing therapy" and "medication notes." (Tr. 50–51). Additionally, he testified that, based on the record, no listings were met or equaled, explaining that the record supports "mild" limitations in Plaintiff's ability to understand and remember and "moderate" limitations regarding his ability to interact with others, and noting that "[t]here is evidence of fairly consistent anxiety, panic." (Tr. 51). He also testified that Plaintiff would have "moderate" limitations in his ability to concentrate, persist, or maintain pace. (*Id.*). As for a residual functional capacity, Dr. Lace testified that, "[i]f the claimant were to work full-time, there would be some significant limitation[s]." (Tr. 52). Specifically, he testified that Plaintiff should "be limited to brief, superficial, and occasional contact with all groups, the general public, supervisors, as well as coworkers" and "to routine tasks, with few, if any changes in terms of venue" and "no fast-paced production or high quotas." (*Id.*).

### B. Relevant Medical Evidence

Plaintiff received counseling at Mind Springs Health Center in Grand Junction, Colorado, from December 8, 2014 through July 30, 2015. (Tr. 351–77). Mental status examinations revealed

3

an anxious mood and racing thoughts but logical and goal-directed thought process with no signs or symptoms of a formal thought disorder and no suicidal ideation and normal speech, memory, and concentration. (*See, e.g.*, Tr. 353, 358–59, 364–65, 372–73). Plaintiff was diagnosed with generalized anxiety disorder. (Tr. 355). Treatment notes from January 2015 document Plaintiff's difficulty leaving home, social anxiety, and generalized anxiety disorder. (Tr. 347). A January 2015 mental status exam revealed poor hygiene, friendly personality, psychomotor agitation, and anxious mood. (Tr. 364). In July 2015, Plaintiff stated that his anxiety had not improved in the last 6 months and rated his anxiety between a seven and nine throughout the day. (Tr. 352). He reported racing thoughts, anxiousness, shaking, heart pounding, panic at times, and fear of leaving the house. (*Id.*).

In February 2016, Plaintiff reported panic attacks and worsening anxiety throughout the day. (Tr. 391). In April 2016, Plaintiff's primary care provider met with Plaintiff's therapist, who "d[id] not think [Plaintiff] can make progress on his anxiety as he is struggling too much." (Tr. 385). His primary care provider told his therapist about his "impression" that Plaintiff "has become habituated to the Xanax and it has created additional pathology." (*Id.*). In May 2016, Plaintiff reported tossing and turning and having nightmares but reported seeing a therapist weekly. (Tr. 383). In July 2016, Plaintiff expressed having "horrible" anxiety and that only Xanax provided relief. (Tr. 379). On exam, Plaintiff appeared agitated, anxious, and distracted, and was described as "[v]ery tense, agitated, anxious." (*Id.*). In August 2016, Plaintiff described symptoms of agoraphobia and social anxiety. (Tr. 397). Mental status exam notes revealed benign findings other than mild avoidant eye contact, moderately rapid speech, moderately racing thought process, severely anxious mood, and severely restless behavior. (Tr. 400).

4

A mental status exam performed by Ms. Baker revealed a well-groomed appearance, mildly avoidant eye contact, mildly mistrustful demeanor, severely anxious mood, and moderately constricted affect. (Tr. 488). Treatment notes throughout 2017 from psychiatric nurse practitioner Maryam Niazi show limited judgment and insight, racing thoughts, fidgety behavior, agitation, mistrust, and an unstable condition but no reports of delusions, self-abuse, aggression, or hallucinations. (*See, e.g.*, Tr. 566, 568–70).

On May 4, 2017, Plaintiff presented for a psychotherapy intake at Tru-Rob Counseling and Consulting. (Tr. 494). He appeared agitated with a constricted affect and anxious mood but had appropriate thought process and was oriented to person, place, and time. (*Id.*). His memory was intact, and he had good attention and concentration. (*Id.*). He had appropriate thought content with normal speech and unremarkable flow of thought and perception. (*Id.*). His diagnoses were listed as generalized anxiety disorder, agoraphobia, and PTSD. (Tr. 495).

On August 15, 2017, Plaintiff's therapist, Ms. Baker, completed a mental source capacity evaluation. (Tr. 417–19). She identified his main psychological problems as PTSD, intense anxiety, and agoraphobia. (Tr. 417). She opined that, due to his mental health condition, Plaintiff would exhibit a pattern of missing four or more days of work per month if he were to attempt to work full time. (*Id.*). She also opined that he would be so preoccupied with his mental condition that he would lose at least one hour of time or more per day of productivity. (*Id*). She further opined that Plaintiff is moderately to extremely limited in a number of work-related social functional areas, including concentration and persistence, social interaction, and adaptation. (Tr. 418–19).

On October 6, 2017, Ms. Niazi completed the same medical source statement and mental work capacity evaluation. (Tr. 511–13). She noted that Plaintiff's primary issues are severe

depression and severe panic attacks due to anxiety. (Tr. 511). Like Ms. Baker, she opined that Plaintiff is markedly to extremely limited in a number of functional areas. (Tr. 512–13).

**C. The ALJ's Decision**

In considering Plaintiff's mental health impairments, the ALJ found that Plaintiff has a mild limitation in his ability to understand, remember, or apply information, explaining that "[t]he evidence shows that [he] has no difficulty understanding and responding appropriately" and that "[h]e has been able to give a cogent history and explanation of his history with little difficulty in remembering." (Tr. 18–19). Next, the ALJ found that Plaintiff has a moderate limitation in his ability to interact with others, stating that, although Plaintiff states that he does not interact with others, "mental status examinations and counseling sessions show him to be cooperative and interactive with his medical sources" and "the evidence shows that [he] has had the ability to relate to his landlord and assist others." (Tr. 19). The ALJ also found that Plaintiff is moderately limited with regard to concentrating, persisting, or maintaining pace, explaining that "[m]ental status examinations have shown intermittent difficulties in concentration with much of his anxiety associated with him running out of his Xanax, being unable to obtain Xanax, or being anxious about his Social Security hearing" and that he "had little difficulty in these areas at the hearing." (*Id.*). Next, the ALJ found that Plaintiff is moderately limited in his ability to adapt or manage himself, explaining that he "was able to live with roommates in Colorado and then move to Ohio to live with his brother," that "[a]t times the claimant has presented as well-groomed, while at other times grooming was noted to be fair," and that "[h]e has been able to get himself to his counseling sessions and other medical examinations." (*Id.*).

The ALJ then explained the RFC with regard to Plaintiff's mental health:

Mentally, the medical expert testified to the above limitations in the claimant's residual functional capacity, and the undersigned gives great weight to Dr. Lace's

6

opinion as it is also well supported by the evidence of record. As summarized above, mental status examinations have shown significant anxiety but to varying degrees depending on the use or lack of Xanax. Physical examinations do not report overt anxiety but rather stated that the claimant was "well appearing and non-toxic" and in no acute distress (Exhibit 10F). Additionally, in October 2016 mood and affect as well as behavior and thought content were observed to be normal (Exhibit 10F, p. 15). Considering the claimant's need for Xanax and the findings when not on Xanax as well as his long history of anxiety, the undersigned finds that the claimant would only be able to sustain low stress, unskilled work as defined in the residual functional capacity.

Regarding the claimant's agoraphobia and his statements that he has no friends and cannot relate to anyone in public, the evidence actually shows that he is able to tolerate being outside the home. He has frequently been able to leave the house to get to his counseling sessions and medical examinations, including surgery. Mental status evaluations reveal him to be cooperative, and he testified that he has been able to leave the house to go to the pharmacy. Thus, it appears that, at least, on a superficial basis he can tolerate being around others. Therefore, the undersigned concludes that the claimant can relate to others as stated in the residual functional capacity.

(Tr. 20).

Next, the ALJ turned to the opinion of psychiatric nurse practitioner, Maryam Niazi, who opined that Plaintiff has marked to extreme limitations in a number of mental health functions. (*Id*.). The ALJ assigned her opinion "no weight," explaining that it contains an opinion reserved for the Commissioner and that it was not provided in work-related terms. (*Id*.). The ALJ then considered the opinion of Plaintiff's therapist, Lori Baker, who opined that Plaintiff has a number of work preclusive functional limitations. (Tr. 20–21). The ALJ assigned her opinion no weight, explaining that "therapists are not considered medical sources," and that "even if she were a medical source, she did not offer her opinion in work-related terms, so it cannot be determined exactly what work activities the claimant is and is not capable of performing." (*Id*.).

Upon review of the record, the ALJ concluded that Plaintiff's statements regarding his mental health are not supported by the record. (Tr. 22). He explained:

As previously pointed out, the claimant testified that he normally does not leave the house. Yet he frequently goes to his doctor and counseling appointments. He can go to the pharmacy for his medications, and physical examinations did not report signs of severe anxiety but rather normal mood, affect, and behavior. In fact, in December 2017 the claimant was even able to go to a dentist (Exhibit 19F, p. 2). Then in Exhibit 12F, page 8, the claimant stated that he was able to use Job and Family Services for transportation. And the evidence appears to support that the claimant is addicted to his Xanax that does control his symptoms of anxiety. He has been offered other medication and treatment, such as Paxil and hospital out-patient clinic, but he did not take the prescription as he wanted his Xanax, and he turned down the clinic (Exhibit 10F, p. 26). He has gone to emergency rooms, urgent care, and other physicians in order to obtain Xanax.

Furthermore, the claimant is able to perform routine household activities. He testified that he sweeps the floors, cares for four dogs, does odds and ends around the house, such as the laundry, cleans the kitchen, empties the dishwasher, and watches television. Other evidence shows that in July 2015 he would occasionally go out to eat and care for animals (Exhibit 8F, p. 5). In fact, despite his statements that he cannot be around others, on July 30, 2015, he stated that he helped his landlord with projects and helped others (Exhibit 5F, p. 2). In April 2016 he was able to mow the lawn (Exhibit 10F). In May 2016 he was painting the house and able to work around the house "happily" with Xanax (Exhibit 6F, p. 6). And in July 2016 he stated that he was "doing enough around the house" (*id.*, p. 2). The amount of activities in which the claimant is able to engage, including helping others, is not indicative of someone with debilitating symptoms.

(Tr. 22–23).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff asserts one assignment of error, that the ALJ improperly evaluated the mental health opinion evidence of record. (Doc. 10 at 6–12).

Plaintiff avers that the ALJ improperly discounted the opinions of his therapist, Lori Baker, and his psychiatric nurse practitioner, Maryam Niazi. (Doc. 10 at 6–12). More specifically, he asserts that "[t]he ALJ discredited their opinions because they were not acceptable medical sources" and that their opinions "were supported by the record and were erroneously dismissed by the ALJ and the non-examining doctor at the hearing." (*Id*. at 6).

Plaintiff's therapist, Ms. Baker and his nurse practitioner, Ms. Niazi are not "acceptable medical sources" pursuant to Social Security Ruling SSR 06-03P (the "Ruling"); instead they are "other sources." *See* SSR 06-03P (S.S.A.), 2006 WL 2329939, at *2.[1] "Other sources" cannot establish the existence of a medically determinable impairment but "may provide insight into the severity of the impairment and how it affects the individual's ability to function. *Id*. at *2. The Ruling notes that "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse

---

[1] This regulation has been rescinded. It still applies, however, to claims (like this one) filed before March 27, 2017. 20 CFR § 404.1527.

9

practitioners ... have increasingly assumed a greater percentage of the treatment and evaluation functions handled primarily by physicians and psychologists." *Id*. at *3. Such opinions are "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file." *Id*. at *4. Accordingly, the Ruling explains that opinions from non-medical sources who have seen the claimant in their professional capacity should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion. *Id*. at *4–5. ALJs may also consider the degree to which the source presents relevant evidence to support the opinion, whether the source has a particular expertise, and "any other factor supporting or refuting the opinion." *Davila v. Comm'r of Soc. Sec.*, 993 F. Supp. 2d 737, 757–58 (N.D. Ohio 2014) (internal quotation marks and citations omitted).

Relevant here, while the Ruling distinguishes between "what an adjudicator must consider and what the adjudicator must explain," SSR 06-03P, 2006 WL 2329939, at *6, the Sixth Circuit, "however appears to interpret the phrase 'should explain' as indicative of strongly suggesting that the ALJ explain the weight as opposed to leaving the decision whether to explain to the ALJ's discretion." *Hatfield v. Astrue*, No. 3:07-CV-242, 2008 WL 2437673, at *2–3 (E.D. Tenn. June 13, 2008) (citing *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 541 (6th Cir. 2007)).

Turning to the opinions in this case, on August 15, 2017, Ms. Baker completed a medical source statement and a mental work capacity evaluation. (Tr. 417–19). She opined that Plaintiff's mental condition would cause him to miss four or more days a month from work and that he would lose at least one hour or more per day of productivity due to his mental health issues. (Tr. 417). She also opined that Plaintiff has "marked" limitations in his ability to: maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; make

simple work-related decisions; ask simple questions or request assistance; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and set realistic goals or make plans independently of others. (Tr. 417–18). She further opined that Plaintiff has "extreme" limitations in his ability to: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and travel in unfamiliar places or use public transportation. (*See id.*). The ALJ stated that he "cannot give much weight to this opinion" for two reasons:

> First, therapists are not considered medical sources (20 CFR 404.1513 and 416.913). However, second, even if she were a medical source, she did not offer her opinion in work-related terms, so it cannot be determined exactly what work activities the claimant is and is not capable of performing.

(Tr. 20–21).

On October 6, 2017, Ms. Niazi completed the same Mental Work Capacity Evaluation. (*See* Tr. 511–513). On the form, she noted that she had been treating Plaintiff for over a year for severe depression and severe panic attack and anxiety disorder. (Tr. 511). She opined that, due to his mental condition, Plaintiff would miss four or more days of work per month and would lose at least one hour or more per day of productivity. (*Id.*). Ms. Niazi also opined that Plaintiff has an "extreme" limitation in his ability to remember locations and work-like procedures and a "marked" limitation in his ability to understand and remember very short and simple instructions. (Tr. 512). She also opined that he has an "extreme" limitation in his ability to do the following: carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within

11

customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. (Tr. 512–13).

On October 26, 2017, Ms. Niazi wrote a letter stating that Plaintiff had been under her care for the past year for the treatment of schizotypal disorder and that "due to [his] current diagnosis, attending an event such as the job preparedness and training may lead to exacerbation of symptoms and a decrease in [his] overall well-being." (Tr. 550).

The ALJ assigned no weight to both of these opinions. (Tr. 20). About the mental capacity evaluation, he stated simply that "no weight can be given as this opinion is not given in work-related terms." (Tr. 21). As for her letter, he stated: "Not only is this statement insufficient to determine exactly what the claimant is able to do in work-related terms, it would be considered the responsibility reserved for the Commissioner[.]" (Tr. 20).

Plaintiff contends that the ALJ's assessment of Ms. Baker's and Ms. Niazi's opinions fails to meet the regulatory requirements and warrants remand. (Doc. 10 at 8–11). First, he asserts that the fact that they are not acceptable medical sources, "does not mean that their opinions are entitled to lesser weight." (*Id*. at 8). Second, he asserts that the ALJ's explanation that the medical source statements were not offered in work-related terms makes no sense because the forms "contain[] opinions regarding a wide variety of work-related functions[,]" and is therefore "confused as to

how the ALJ could" conclude that these opinions were not offered in work-related terms. (*Id*. at 8–9). Additionally, Plaintiff asserts that the opinions are supported by the record as a whole, which "documents extensive mental health treatment from various facilities." (*Id*. at 9–10).

In response, Defendant states that, because there is no "good reasons" requirement for non-medical sources, the ALJ "went beyond" what is statutorily required when weighing the opinions of Ms. Baker and Ms. Niazi. (Doc. 11 at 6). Defendant also refers to the fact that Plaintiff can perform "a range of household chores, sweeping and steam mopping floors, caring for four dogs, doing laundry, and cleaning the kitchen" and that, "[i]n July 2015, he reported helping others and taking care of animals" and [d]espite statements that he could not be around others, he reported helping his landlord and others with projects." (*Id*. at 7).

Defendant's defense of the ALJ's explanation fails. To start, the ALJ did not discuss the relevant factors for assessing a non-medical source opinion. Indeed, despite Defendant's argument to the contrary, the Sixth Circuit "appears to interpret the phrase 'should explain' as indicative of strongly suggesting that the ALJ explain the weight as opposed to leaving the decision whether to explain to the ALJ's discretion." *Hatfield*, 2008 WL 2437673, at *2–3. A district court in this Circuit explained the ALJ's obligation in this regard:

> Here ALJ Jarvis dismisses the opinions of both [her nurse practitioner and her counselor] in short order, assigning them both little weight. In fact, the only information the ALJ provides about these opinions is that they are not consistent with the balance of the record and that Ms. Dillane's opinion is inconsistent with her own treatment records. No further explanation is given. Therefore, while not entitled to controlling weight, the Magistrate still finds that the decision of the Commissioner must be reversed and remanded for further discussion and explanation of the weight assigned to the opinions of Ms. Herwig and Ms. Dillane[.]

*Davila*, 993 F. Supp. 2d at 757–58.

Here, the ALJ did even less. And, "[w]hile the ALJ need not give a formulaic recitation of the factors discussed in the Social Security regulations, the ALJ must ensure that the discussion

of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning." *Woodcock v. Comm'r of Soc. Sec.*, 201 F. Supp. 3d 912, 923 (S.D. Ohio 2016) (internal quotation marks and citations omitted). The ALJ's threadbare analysis of Ms. Baker's and Ms. Niazi's fails to satisfy this standard. Consequently, remand is required. *See, e.g.*, *Walters v. Comm'r of Soc. Sec.*, No. 1:18-CV-726, 2019 WL 4593509, at *3 (W.D. Mich. Sept. 23, 2019) ("The Court recognizes that the ALJ has considerable discretion in evaluating the opinions of non-acceptable medical sources. However, in this case, the Court cannot trace the path of the ALJ's reasoning with respect to Mr. Johnson."); *Caywood v. Comm'r of Soc. Sec.*, No. 3:17-CV-1725, 2019 WL 3753235, at *2 (N.D. Ohio Aug. 8, 2019) (remanding where ALJ "did not discuss adequately any of the applicable factors" of therapist but rather gave discounted the opinions because they came from non-acceptable medical sources and failed to make a "meaningful comparison" between their opinions and "the record as a whole"); *Powell v. Colvin*, No. 1:13-cv-275, 2015 WL 137505, at *8–10 (E.D. Tenn. Jan. 6, 2015) (recommending remand, in part, because the ALJ "failed to provide any basis for [his] completely conclusory finding" regarding the nurse's practitioner's opinion).

In sum, given their treatment history and Plaintiff's history of mental health issues, Ms. Baker's and Ms. Niazi's opinions deserve a more thoughtful analysis, including consideration of the relevant regulatory factors and the objective evidence as a whole.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and Administrative Law Judge under Sentence Four of § 405(g).

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: January 7, 2020　　　　　　　　　　　　　/s/ Kimberly A. Jolson
　　　　　　　　　　　　　　　　　　　　　　　KIMBERLY A. JOLSON
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE